IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARION MAKEDA-PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-3312 |
| | ) | |
| ILLINOIS SECRETARY OF STATE, | ) | |
| JESSE WHITE, DENISE | ) | |
| WESTNEDGE, and MISTY CASKEY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

On November 7, 2014, pro se Plaintiff Marion Makeda-Phillips filed her Fourth Amended Complaint against Defendants Illinois Secretary of State Jesse White, Denise Westnedge, and Misty Caskey (d/e 62).  Now pending are Plaintiff's Motion for Summary Judgment (d/e 77), Defendants' Cross-Motion for Summary Judgment (d/e 81), and Defendants' Motion to Strike Plaintiff's Declaration (d/e 86).

The Motion to Strike Plaintiff's Declaration is GRANTED because the Declaration is neither an affidavit nor signed under

penalty of perjury and the statements therein contradict Plaintiff's deposition testimony. Moreover, because Plaintiff has failed to produce evidence upon which a jury could find in her favor, Defendants' Cross-Motion for Summary Judgment is GRANTED as to the federal claims, and Plaintiff's Motion for Summary Judgment is DENIED. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims are dismissed without prejudice.

## I. BACKGROUND

Plaintiff began working in the Illinois Secretary of State's Office in 1988. In 2009, Plaintiff began working as an Operations Associate in the Administrative Hearings Department of the Secretary of State's office. Defendant Westnedge was Plaintiff's supervisor. Defendant Caskey was Westnedge's assistant and also functioned as one of Plaintiff's supervisors. Defendant White is the Illinois Secretary of State.

Plaintiff indicates in her Motion for Summary Judgment that she is bringing her Americans with Disabilities Act (ADA) claim only against her employer, Defendant White. She brings her remaining

claims against Defendants Westnedge and Caskey in their individual capacities and Defendant White in his official capacity for prospective relief only. At the time of Plaintiff's deposition on December 17, 2014, Plaintiff was on sick leave but still employed by the Secretary of State's Office.

Plaintiff originally filed suit in November 2012. Plaintiff has several times requested the Court appoint her counsel. See d/e 3, 6, 14. The Court initially denied those requests. However, on September 3, 2014, United States Magistrate Judge Tom Schanzle-Haskins sua sponte reconsidered Plaintiff's motions requesting counsel and appointed counsel to represent Plaintiff. On September 17, 2014, counsel moved to withdraw on the basis that Plaintiff stated she did not want counsel. On September 30, 2014, following a hearing, this Court granted the motion to withdraw.

On November 7, 2014, Plaintiff filed her Fourth Amended Complaint. Plaintiff raises numerous claims purportedly pursuant

to Title VI, the ADA, and 42 U.S.C. § 1983.  See Fourth Am. Compl. (d/e 62).[1]  Plaintiff's allegations can be summarized as follows.

In Count I, Plaintiff alleges that Defendants failed to intervene to protect Plaintiff from violations of her civil rights and conspired together to violate her civil rights.  Plaintiff alleges she was suspended twice, once for "not being fast enough to complete mail" and once for making too "many mistakes and not completing other duties as assigned."  Fourth Am. Compl. (d/e 62, p. 5 of 20). Plaintiff alleges she performed her duties in a competent and satisfactory manner but that she was suspended and refused a transfer on account of her race and because of her "Americans with Disability" claims.  Id. (d/e 62, p. 6 of 20).

In Count II, Plaintiff alleges that Defendants failed to intervene to protect Plaintiff from violations of her civil rights, conspired

---

[1] Plaintiff cites the ERISA statute, but Plaintiff does not bring such a claim. Plaintiff also cites 42 U.S.C. § 1981.  However, § 1983 provides the exclusive remedy for relief for violations of the rights protected by § 1981 when the claim is asserted against state actors.  Campbell v. Forest Pres. Dist. of Cook Cnty., Ill., 752 F.3d 665, 671 (7th Cir. 2014), cert. denied, 135 S. Ct. 947 (2015). Plaintiff's § 1983 claim is construed as a claim that Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment and/or a § 1981 claim.  See Sams v. City of Chi., No. 13-CV-7625, 2014 WL 6685809, at * 6 (N.D. Ill. Nov. 25, 2014)(a § 1983 claim can be based on a violation of § 1981).

together to violate her civil rights, and breached a written contract by violating Secretary of State policies regarding oral and written warnings and suspensions. Plaintiff alleges she helped others with their job duties, but Plaintiff never received help.

In Count III, Plaintiff alleges that Defendants failed to intervene to protect Plaintiff from violations of her civil rights, conspired together to violate Plaintiff's civil rights, and retaliated against Plaintiff when she asked for a transfer to a different department because Plaintiff went to the "human rights and equal employment office." See Id. (d/e 62, p. 9 of 20). The retaliation also included the two job suspensions.

In Count IV, Plaintiff alleges that Defendants failed to intervene to protect Plaintiff from violations of her civil rights, failed to provide Plaintiff with necessary medical care, and conspired together to violate one or more of Plaintiff's civil rights. Plaintiff also alleges Defendant White knew about the civil rights violations and ignored them. According to Plaintiff, Defendant White received numerous e-mails and a visit from union stewardess Pam

Fernandez concerning Plaintiff's civil rights being violated and he ignored everything.

In Count V, Plaintiff alleges that Defendants failed to intervene to protect Plaintiff from violations of her civil rights, failed to provide Plaintiff with necessary medical care, and conspired together to violate one or more of Plaintiff's civil rights. Plaintiff asked to be transferred to Chicago, but these requests were allegedly denied due to her race and disability. Plaintiff claims that Mary Tumulty received the Chicago position even though Plaintiff had more "years" and experience.

In Count VI, Plaintiff alleges that Defendants failed to intervene to protect Plaintiff from violations of her civil rights and conspired together to violate one or more of Plaintiff's civil rights. Plaintiff asked for help processing the mail, but she was denied help several times. Plaintiff had to assist other job workers with their job duties. Plaintiff was threatened with discipline on December 1, 2010. Plaintiff also wrote in her Fourth Amended Complaint: "Discriminatory Workplace Harassment." Fourth Am. Compl. (d/e 62, p. 15 of 20). Plaintiff asserts she was threatened with discipline

by "[D]efendant" on December 1, 2010 and that "Defendant instructed Plaintiff to put aside her job duties to help others with their job duties." <u>See</u> Fourth Am. Compl. (d/e 62, p. 16 of 20).

On October 14, 2014, Judge Schanzle-Haskins extended discovery to January 28, 2015 and extended the dispositive motion deadline to February 13, 2015. On December 17, 2014, Defendants deposed Plaintiff. When questioned about her claims, what happened, and what evidence she had, Plaintiff responded that she did not recall or did not remember. In fact, throughout the deposition, Plaintiff answered that she did not know, did not recall, or did not remember over 170 times.

One week later, on December 24, 2014, Plaintiff filed her Motion for Summary Judgment asserting that she is entitled to judgment as a matter of law. She supports her Motion with various documents, including unsworn statements, her suspension letters, e-mails, documents filed in the Illinois Human Rights Commission, earlier versions of Plaintiff's complaints, Plaintiff's request for a transfer and reasonable accommodation, and documents filed with the Equal Employment Opportunity Commission (EEOC), such as

the Charge of Discrimination and the Dismissal and Notice of Rights. Plaintiff also filed a Declaration (d/e 84).

On February 4, 2015, Defendants filed their response to Plaintiff's Motion for Summary Judgment and their Cross-Motion for Summary Judgment (d/e 81). Defendants also filed a Motion to Strike Plaintiff's Declaration (d/e 86). Defendants seek summary judgment on the basis that Plaintiff has no evidence supporting any of the claims she makes against Defendants. Defendants also argue they are entitled to qualified immunity as to the § 1983 claims.[2]

Defendants attached to their Motion the affidavits of Defendants Westnedge and Caskey, which provide the following information.

Westnedge holds the position of "Executive II" with the Illinois Secretary of State's Administrative Hearings Department. Westnedge Aff. ¶ 1, Defs.' Cross-Motion, Exhibit 2 (d/e 82-2).

---

[2] Defendants raised numerous affirmative defenses in their Answer, but only seek summary judgment on the grounds stated herein. See Answer (d/e 69) (raising as affirmative defenses qualified immunity, Eleventh Amendment immunity, sovereign immunity, statute of limitations, res judicata, and failure to exhaust administrative remedies).

Westnedge supervised Plaintiff from 2009 through 2012.  <u>Id.</u> ¶¶ 6, 8.  Over the course of several years up until the time Plaintiff took leave, Plaintiff's work performance was consistently deficient.  <u>Id.</u> ¶ 7.

Plaintiff's job duties included handling incoming mail, which involved opening envelopes, date-stamping correspondence, and sorting and distributing the mail to the correct individual or section. <u>Id.</u> ¶ 9.  Plaintiff had difficulty completing those tasks on a daily basis, distinguishing between the various forms used by the Department, and determining to which person or Department the form should be delivered.  <u>Id.</u> ¶ 10.  Plaintiff's mistakes were discussed with her personally with no improvement in her performance.  <u>Id.</u> ¶ 15. Plaintiff also received several counseling sessions for her work deficiencies.  <u>Id.</u> ¶ 20.

On May 2, 2011, Plaintiff was orally warned as a form of discipline with respect to her deficiencies.  <u>Id.</u> ¶ 21.  On July 28, 2011, Plaintiff received a written warning.  <u>Id.</u> ¶ 23.  In June 2012, Plaintiff was suspended from June 25, 2012 through July 4, 2012. <u>Id.</u>

Westnedge asserts that Plaintiff's performance issues significantly impaired the efficient functioning of the office, resulting in delayed work and time taken away from supervisors and other employees' duties.  Id. ¶ 25.  Westnedge asserts that Plaintiff's job performance reflected that Plaintiff was not qualified to perform the tasks required of an "operations assistant" in the office.  Id. ¶ 26. In Westnedge's nearly 20 years of experience in the Department, "one person has been able to satisfactorily perform in one day the tasks assigned to" Plaintiff.  Id. ¶ 25.

Defendant Caskey is a supervisor of the support services section of the Administrative Hearings Department.  Caskey Aff. ¶¶ 1, 2, Defs.' Cross-Motion, Exhibit 3 (d/e 82-2).  Caskey began working with Plaintiff in 2009.  Id. ¶ 5.  She functioned as one of Plaintiff's supervisors.  Id. ¶ 6.

Caskey worked with Westnedge to try to help Plaintiff address her performance issues.  Id. ¶ 7.  The entire time Caskey worked with Plaintiff, Plaintiff had problems handling incoming mail, date-stamping correspondence, and sorting and distributing the mail to the correct individual or section.  Id. ¶ 8.  After Plaintiff took

medical leave in December 2012, Plaintiff's job duties were assigned
to another employee in the Department.  Id. ¶ 9.  That employee
was able to perform Plaintiff's job in addition to her own job by the
close of business each day.  Id.  Subsequently, another employee
was given the job of handling the daily mail, and she, too, has been
able to complete those duties in addition to other assigned duties.
Id.

After Defendants filed their Cross-Motion for Summary
Judgment, the Court sent Plaintiff a notice that the motion had
been filed and gave Plaintiff the following admonition:

> When a motion for summary judgment is made and
> properly supported, you must not simply rely upon the
> allegations made in your complaint.  Rather, you must
> respond by affidavit(s) or as otherwise provided in Rule
> 56 of the Federal Rules of Civil Procedure, a copy of
> which is attached.  Your response must set forth specific
> facts showing that there is a genuine issue of material
> fact for trial.  If you do not submit affidavits or other
> documentary evidence contradicting the defendants'
> assertions, the defendants' statement of facts will be
> accepted as true for purposes of summary judgment.

See Rule 56 Notice (d/e 83).

On February 25, 2015, Plaintiff filed a response to Defendants'
Cross-Motion for Summary Judgment (d/e 85).  Plaintiff argues

that Defendants distort the facts, that Plaintiff does not have a photographic memory of the events, and that there are genuine issues of material fact such that the Court should grant Plaintiff's Motion for Summary Judgment.  Plaintiff attached a December 21, 2012 document from her psychiatrist, Dr. Obul Reddy, stating that Plaintiff "has decompensated" and that he advised her to go on a medical disability leave from work for six months.  See Letter (d/e 85, p. 3 of 16).  Plaintiff also attached portions of the Office of Secretary of State Policy Manual.  Attachment (d/e 85, pp. 4-16).

## II. DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S DECLARATION

On February 25, 2015, Plaintiff submitted what she titled a Declaration, although it is neither notarized nor sworn in conformance with 28 U.S.C. § 1746, which requires that a declarant declare "under penalty of perjury that the forgoing is true and correct."[3]  In the Declaration, Plaintiff states the following.

---

[3] Interestingly, Plaintiff attached a different declaration to her Motion for Summary Judgment (filed December 24, 2014) which she purported to sign under penalty of perjury.  See Declaration (d/e 77 p. 11 of 18).  In that document, she states she has personal knowledge of the facts and circumstances "set forth below" but the only fact listed is that the declarant is the Plaintiff in the case.  Id.

In January 2010, three weeks after she began working in the Administrative Hearings Department, Plaintiff was told she was making too many mistakes and not working fast enough. Deputy Director Jay Mesi told Plaintiff he would write her up and get her fired. During another meeting, Mesi told Plaintiff his dog could process the mail better than she could. Defendants Westnedge and Caskey constantly claimed Plaintiff made errors and did not work fast enough, but no investigation was made into their claims. Defendants Westnedge's and Caskey's constant harassment caused Plaintiff's major depressive disorder. Plaintiff asked many times for a transfer to another Department. <u>See</u> Declaration (d/e 84).

Defendants ask the Court to strike Plaintiff's Declaration. Defendants assert that the Declaration purports to state Plaintiff's recollection of certain events. Aside from the fact that the Declaration contains a hearsay statement from a witness who was never disclosed as a possible witness and whose role in the events is not clearly identified, Defendants assert that Plaintiff cannot defeat a motion for summary judgment by contradicting deposition testimony with a later-filed contradictory affidavit.

Plaintiff responds to the Motion to Strike by stating additional facts (such as that "Jeanine Stroger failed to properly investigate all of Plaintiff's allegations of discrimination and harassment") and attaching additional documents. <u>See</u> Pl.'s Resp. to Mot. to Strike (d/e 87). The documents include letters pertaining to two suspensions—April 3, 2012 (a three-day suspension) and June 22, 2012 (an eight-day suspension); a page from a document submitted to the Illinois Department of Human Rights; and a page from a May 18, 2012 e-mail to the union job steward from Deputy Director Mesi regarding Plaintiff's grievance and setting forth the reasons management did not agree with the alleged violation.

The Court strikes the Declaration for two reasons. First, it is neither an affidavit nor a declaration as required by Federal Rule of Civil Procedure 56(c)(4) because it is not notarized or signed under penalty of perjury pursuant to 28 U.S.C. § 1746. <u>See</u> <u>Hu v. Vill. of Maywood</u>, No. 07-CV-7203, 2010 WL 276704, at *5 (N.D. Ill. Jan. 19, 2010) (striking affidavit that was neither notarized nor contained the requisite "under penalty of perjury" language required by 28 U.S.C. § 1746); <u>see</u> <u>also</u> Advisory Committee Notes, 2010

Amendments to Federal Rule of Civil Procedure 56(c)(4) (noting that a formal affidavit is no longer required and that 28 U.S.C. § 1746 allows for written unsworn declarations "subscribed in proper form as true under penalty of perjury to substitute for an affidavit").

Second, a party cannot generally create an issue of fact by submitting an affidavit that contradicts prior deposition testimony. Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1055 (7th Cir. 2000) (quoting Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996) (noting that "[t]he concern in litigation, of course, is that a party will first admit no knowledge of a fact but will later come up with a specific recollection that would override the earlier admission"). Exceptions to this rule include contradictory affidavits based on newly discovered evidence or affidavits that clarify ambiguous or confusing deposition testimony. Buckner, 75 F. 3d at 292.

In this case, Plaintiff offers no reason why she could not remember any details about her claims at her deposition but could remember specifics about her claims a few months later in a Declaration. Her claim in her response to the Cross-Motion for

Summary Judgment that she does not have a photographic memory does not explain why she remembered the details a few months after her deposition.  <u>See</u> Pl.'s Resp. (d/e 85).

At her deposition, Plaintiff was asked who harassed her, who threatened her with discipline, how she was threatened, and when she was threatened.  Dep. Tr. 37-38 (d/e 82-1).  Plaintiff responded to each question that she did not remember or did not recall.  <u>Id.</u> However, in her Declaration, Plaintiff stated that in various meetings, Deputy Director Mesi told Plaintiff he would write her up and get her fired and that his dog could process the mail better than she could.  <u>See</u> Declaration (d/e 84).

Plaintiff also stated in the Declaration that Defendants Westnedge and Caskey constantly claimed that Plaintiff made errors and was not working fast enough but no investigation was made. However, at her deposition, Plaintiff could not recall how Defendants Westnedge and Caskey discriminated against her and could not remember the extreme and outrageous conduct she claims to have suffered.  Dep. Tr. 21, 27 (d/e 82-1).

Therefore, because the statements in the Declaration contradict Plaintiff's deposition testimony, the Motion to Strike is granted. [4] See, e.g., Clark v. Takata Corp., 192 F.3d 750, 761 (7th Cir. 1999) (finding the district did not abuse its discretion in striking the affidavit from consideration at summary judgment where the deponent testified she did not recall anything about the lap belt and did not recall cutting, removing, or unlatching the belt but stated in her affidavit that she did not cut or otherwise release the lap belt); Buckner, 75 F.3d at 292 (district court did not abuse its discretion by striking an affidavit that was very specific— describing the object the plaintiff stepped on as an object "felt to be about the size of a ladies' watch"—which contradicted her earlier deposition testimony that she did not know what the object was, only that it was "something uneven and faulty" and a "lump," when the specificity was necessary to establish a causal link); Northbound Group, Inc. v. Norvax, Inc., 5 F. Supp. 3d 956, 964 (N.D. Ill. 2013) (finding statements in the affidavit did not create a

---

[4] In any event, the Court does not find that the Declaration supports either Plaintiff's Motion for Summary Judgment or opposition to Defendants' Cross-Motion for Summary Judgment.

material disputed fact where the plaintiffs' officers did not attempt to explain how or why they recalled the representations made by the defendants' executives in their affidavits when they did not recall the representations during their depositions).

### III. LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008).

The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." <u>Brewer v. Bd. of Trs. Of the Univ. of Ill.</u>, 479 F.3d 908, 915 (7th Cir. 2007).

However, when the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant need only show there is an absence of evidence to support the nonmovant's case. Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting Celotex, 477 U.S. at 325). The nonmovant must then produce evidence, such as affidavits, depositions, or answers to discovery, to show that there is evidence upon which a jury could find in her favor. Modrowski, 712 F.3d at 1169 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986)).

The non-moving party cannot rest on the allegations in her complaint but must offer support for those allegations. See Mosley v. City of Chi., 614 F.3d 391, 400 (7th Cir. 2010). Moreover, a court may only consider admissible evidence when reviewing a motion for summary judgment. Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009).

In addition, the court is only required to consider the material specifically cited to by the parties, although the court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). Nonetheless, a district court is "not required to scour every inch of the record for

evidence that is potentially relevant to the summary judgment motion." Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003); Greer v. Bd. of Educ. of City of Chi., Ill., 267 F.3d 723, 727 (7th Cir. 2001) (noting, in a pro se case, that employment discrimination cases are fact-intensive, that a court is not required to scour the record looking for factual disputes, and "a lawsuit is not a game of hunt the peanut"). The Seventh Circuit has described summary judgment as the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince the trier of fact to accept its version of the events.'" Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

## IV. ANALYSIS

The Court concludes that Plaintiff has not submitted admissible evidence to show that no genuine issue of material fact exists and that she is entitled to summary judgment as a matter of law. Similarly, Plaintiff has not pointed to admissible evidence that demonstrates that genuine issues of material fact exist that would require denying Defendants' Motion for Summary Judgment.

Therefore, Defendants are entitled to summary judgment on Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**A.** **Defendants are entitled to summary judgment on Plaintiff's race and disability discrimination and harassment claims.**

In her Fourth Amended Complaint, Plaintiff alleges that Defendants discriminated against Plaintiff due to her race and her disability. Specifically, Plaintiff alleges her two suspensions and the denials of requests for a transfer were due to race and disability discrimination.

To avoid summary judgment on a discrimination claim brought under Title VII, 42 U.S.C. § 1983, or the ADA, the same requirements apply: the plaintiff must point to direct or circumstantial evidence of discriminatory motivation to create a triable issue (the direct method) or establish a prima facie case of discrimination under the McDonnell Douglas (McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)) formula (the indirect method). Egonmwan v. Cook Cnty. Sheriff's Dep't, 602 F.3d 845, 850 and n.7 (7th Cir. 2010) (the same requirements apply to Title VII, § 1981,

and § 1983 discrimination claims); see also Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001) (direct and indirect methods of proof apply in an ADA discrimination claim). It is unclear which method Plaintiff is attempting to use.

There are two ways a plaintiff can prove discrimination via the direct method: (1) direct evidence; and (2) circumstantial evidence. Goetz v. City of Springfield, 699 F. Supp. 2d 1066, 1076 (C.D. Ill. 2010). The direct method of proof requires either an admission of discriminatory intent by the defendant or circumstantial evidence that points directly to a discriminatory reason for the defendant's action. Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 490 (7th Cir. 2007)(citing Luks v. Baxter Healthcare Corp., 467 F.3d 1049,1052 (7th Cir. 2006)). Such circumstantial evidence can take many forms,

> including suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group, evidence showing that similarly situated employees outside the protected class received systematically better treatment, and evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

<u>Van Antwerp v. City of Peoria, Ill.</u>, 627 F.3d 295, 298 (7th Cir. 2010) (internal quotation marks omitted) (quoting <u>Sun v. Bd. of Trs.</u>, 473 F.3d 799, 812 (7th Cir. 2007). The circumstantial evidence that is offered "must 'point directly to a discriminatory reason for the employer's action.'" <u>Van Antwerp</u>, 627 F.3d at 298 (quoting <u>Adams v. Wal–Mart Stores, Inc.</u>, 324 F.3d 935, 939 (7th Cir. 2003)). A plaintiff proceeding under the direct method, whether relying on direct evidence or circumstantial evidence, can avoid summary judgment if she shows there is a triable issue on whether the adverse employment action had a discriminatory motivation. <u>Rudin v. Lincoln Land Cmty. Coll.</u>, 420 F.3d 712, 721 (7th Cir. 2005) (quoting <u>Wallace v. SMC Pneumatics, Inc.</u>, 103 F.3d 1394, 1397 (7th Cir. 1997).

Plaintiff has not presented evidence of an outright admission by Defendants that shows the challenged actions were taken because of Plaintiff's race or alleged disability. Moreover, Plaintiff has not pointed to any evidence or made any argument that there is circumstantial evidence that points to a discriminatory reason for

the suspensions and denial of a transfer. Therefore, Plaintiff cannot show a triable issue exists under the direct method.

Plaintiff can also survive a motion for summary judgment by using the indirect method of proof. To do so, Plaintiff must first establish a prima facie case by establishing (1) she was a member of a protected class; (2) she was meeting the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably. See Egonmwan, 602 F.3d at 850. Once she establishes her prima facie case, the burden shifts to Defendants to provide a legitimate, nondiscriminatory reason for their actions. Id. Plaintiff must then rebut Defendants' stated reason with evidence that it is just a pretext for race or disability discrimination. Id.

Defendants argue that Plaintiff has no admissible evidence to establish a prima facie case of race or disability discrimination. The Court agrees.

Even assuming Plaintiff could prove the other elements of her prima facie case, a matter the Court does not decide, Plaintiff has

not shown that similarly situated coworkers were treated more favorably.  A plaintiff need not produce a "clone".  <u>Chaney v. Plainfield Healthcare Ctr.</u>, 612 F.3d 908, 916 (7th Cir. 2010).  However, to show that a co-worker is similarly situated, a plaintiff must establish that the individual is "directly comparable to her in all material respects."  <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676, 680 (7th Cir. 2002).  In disciplinary cases, a plaintiff must show that the allegedly similar "employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  <u>Peele v. Country Mut. Ins. Co.</u>, 288 F.3d 319, 330 (7th Cir. 2002) (quoting <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617-18 (7th Cir. 2000)); <u>see also</u>, <u>e.g.</u>, <u>Jordan v. City of Gary, Ind.</u>, 396 F.3d 825, 834 (7th Cir. 2005) (stating that under the indirect method, plaintiff had to establish that the person promoted was outside of the plaintiff's protected class, occupied the same job level, engaged in similar past misconduct, but was treated more favorably for no legitimate reason).

No such evidence is presented here. Plaintiff has not presented any admissible evidence of similarly situated white or nondisabled employees who engaged in similar conduct but were not disciplined or who received a transfer. See Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) (holding that "a court may consider only admissible evidence in assessing a motion for summary judgment").

At her deposition, Plaintiff was asked if any white employees were treated more favorably than she was treated. Plaintiff responded, "I do not remember." d/e 82-1 p. 27. Nonetheless, Plaintiff submitted an Affidavit dated April 10, 2012 to the State of Illinois Human Rights Commission, which she attaches as Exhibit 26 to her Motion for Summary Judgment. In that Affidavit, Plaintiff asserted that Joyce Byrd, Linda Hawks, and George Teator told Plaintiff that Dawn Meyer and Mary Schnapp, white employees who had the job before Plaintiff, did not complete the mail on a daily basis and received help in completing the mail. Ex. 26 ¶¶ 8, 9. However, this statement is hearsay and not admissible. Gunville, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay

to oppose a motion for summary judgment"). Plaintiff also attaches a statement from Byrd (complaining about her own written warning) which is neither notarized nor made under penalty of perjury. Therefore, that statement is also not admissible.

Plaintiff suggests that other employees received help with the mail, and she did not receive help. However, she provides no other information about these employees to show that they were similarly situated to Plaintiff.

Plaintiff attaches to her Motion for Summary Judgment an e-mail referencing a going-away party for Mary Tumulty, who accepted a transfer to the Chicago office. <u>See</u> Pl.'s Mot. Ex. 6 (d/e 77-1 (dated October 2, 2012). It appears the position was Operations Associate, the same position Plaintiff held. <u>See</u> Pl.'s Motion for Summary Judgment, Attachment (d/e 77-3 page 24 of 33). Plaintiff also included a "To Whom it May Concern" statement signed by Plaintiff indicating that Tumulty is a white female working in the Secretary of State's Administrative Hearings Department in Chicago. <u>See</u> <u>Id.</u> (d/e The statement is neither notarized nor signed under "penalty of perjury." <u>See</u> 28 U.S.C. § 1746. But even

accepting such evidence, Plaintiff has not pointed to any evidence that Tumulty was a similarly-situated coworker, such as evidence about Tumulty's qualifications. Moreover, at her deposition, Plaintiff could not even remember what transfer Plaintiff requested, when or how she requested a transfer, what the position was, whether she was qualified for the position, or whether she was officially denied the position. Dep. Tr. 36-37.

Even if Plaintiff could establish a prima facie case of race or disability discrimination, Defendants have offered a legitimate, nondiscriminatory reason for their actions. <u>Brewer</u>, 479 F.3d at 915 (noting it did not matter whether Plaintiff had established a prima facie case because the defendant offered a legitimate, nondiscrimination reason for its actions). Defendants assert that Plaintiff was unable to perform her job duties and was not qualified to perform the tasks required of an Operations Assistant. Westnedge Aff. ¶¶ 10, 12, 15, 16, 17, 18, 19, 25, 26.

Because Defendants articulated a legitimate, non-discriminatory reason for their actions, Plaintiff must show pretext. The focus of the pretext inquiry is whether the stated reason is

honest, not whether the decision is accurate or wise.  <u>Bates v. City of Chi.</u>, 726 F.3d 951, 956 (7th Cir. 2013).  To show pretext, Plaintiff must show that the reasons for her suspensions or the denial of her transfer (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to motivate the action.  <u>Widmar v. Sun Chem. Corp.</u>, 772 F.3d 457, 465 (7th Cir. 2014), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u>.  Plaintiff has failed to present any evidence that would show that a genuine issue of material fact exists that Defendants' articulated reasons for their actions were pretext for discrimination.

Similarly, to the extent Plaintiff alleges a racial harassment claim, Plaintiff has not pointed to evidence of harassment that is race-based, severe, or pervasive.  <u>See</u>, <u>Pantoja v. Am. NTN Bearing Mfg. Corp.</u>, 495 F.3d 840, 851 (7th Cir. 2007) (affirming summary judgment on harassment claim on the ground that a few isolated incidents does not constitute conduct that is severe or pervasive, as required for a harassment claim); <u>Peters v. Wal-Mart Stores East LP</u>, 512 F. App'x 622, 627 (7th Cir. 2013) (finding the plaintiff failed to establish a prima facie case of racial harassment where she had

no evidence that the reprimands were race-based and the discipline was an isolated incident and not pervasive or severe enough to constitute an objectively hostile work environment).  In fact, at her deposition, Plaintiff could not recall or remember what evidence she had that she was harassed, who harassed her, who threatened to discipline her, how she was threatened, and when she was threatened.  Dep. Tr. 37-38.   Plaintiff attached e-mails to her Motion for Summary Judgment, but nothing in those e-mails shows pervasive or severe harassment.  See Pl.'s Mot. for Summ. J., Ex. 31 (d/e 77-1 p. 29 or 35); Ex. 46 (d/e 77-2 page 12 of 36); Ex. 47 (d/e 77-2 page 13 of 36).

The Seventh Circuit has not yet decided whether a hostile work environment claim is actionable under the ADA.  See Holyfield-Cooper v. Bd. of Educ. of the City of Chi., -- F. App'x ---, 2015 WL 669963, at *4 (Feb. 18, 2015) (merely assuming a plaintiff could bring hostile work environment claim under the ADA); Lloyd v. Swifty Transp., Inc., 552 F.3d 594, 603 (7th Cir. 2009 ("We have not decided whether allowing a hostile work environment is actionable under the ADA").  Even assuming Plaintiff can make

such a claim, she has failed to offer evidence suggesting that the work environment was subjectively and objectively hostile and abusive. <u>Mannie v. Potter</u>, 394 F.3d 977, 982 (7th Cir. 2005) (a plaintiff must show that the hostile work environment is both subjectively and objectively hostile); <u>Bennington v. Caterpillar, Inc.</u>, 275 F.3d 654, 660 (7th Cir. 2001) (involving a claim that the work environment was hostile because of the plaintiff's age).

Therefore, because Plaintiff has failed to present evidence demonstrating a genuine issue of material fact exists, Defendants are entitled to summary judgment on Plaintiff's discrimination and harassment claims.

**B.    Defendants are entitled to summary judgment on Plaintiff's retaliation claims.**

Plaintiff also alleges in her Fourth Amended Complaint that she was retaliated against because she "went to" the Human Rights Commission and EEOC. Plaintiff attached to her Motion for Summary Judgment a document from the EEOC, showing a date of filing as March 29, 2011. Pl.'s Mot. for Summ. J., Attachment (d/e 77-4 p. 10 of 15). Plaintiff also attached documents relating to the

Illinois Human Rights Commission, one of which suggests a date of filing of July 2011 and one of which suggests a date of filing after August 2012. <u>See</u> <u>Id.</u> Exhibit 40 (d/e 77-4 p. 12 of 15). Plaintiff asserts that the retaliation consisted of her suspensions (which occurred on April 3, 2012 and June 22, 2012) and the denial of her requests for transfer (she made at least one request in September 2012). <u>See</u> <u>Id.</u> Transfer Request (d/e 77-3, p. 25 of 33).

A claim of retaliation, whether under Title VII or the ADA can be proved using the direct or indirect method of proof described above. <u>Humphries v. CBOCS West Inc.</u>, 474 F.3d 387, 404 (7th Cir. 2007) (Title VII and § 1981); <u>Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522</u>, 657 F.3d 595, 601-02 (7th Cir. 2011) (ADA). Plaintiff cannot bring a claim for retaliation under § 1983 pursuant to the Equal Protection Clause. <u>See</u> <u>Boyd v. Ill. State Police</u>, 384 F.3d 888, 898 (7th Cir. 2004) (noting that "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause"); <u>Tate v. Ancell</u>, 551 F. App'x 877, 898 (7th Cir. 2014) (unpublished).

Under the direct method, Plaintiff has to present direct or circumstantial evidence that she was retaliated against because she engaged in protected activity. Under the indirect method, Plaintiff has to show (1) that she engaged in protected activity, such as filing a charge of discrimination; (2) that she performed her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that she was treated less favorably than other similarly situated employees who did not engage in protected activity. Mannie, 394 F.3d at 98; Squibb v. Memorial Med. Cent., 497 F.3d 775, 788 (7th Cir. 2007). If Plaintiff can establish her prima face case under the indirect method, Defendants must articulate a legitimate, nondiscriminatory reason for the employment action. Mannie, 394 F.3d at 984. Once Defendants do so, Plaintiff must show that Defendants reasons are pretextual. Id.

As the Court found with respect to Plaintiff's claims of race and disability discrimination, the Court finds Plaintiff has not pointed to any direct or circumstantial evidence that she was retaliated against because she engaged in a protected activity. Similarly, Plaintiff has not pointed to evidence that she was treated

less favorably than other similarly-situated employees who did not engage in protected activity. Finally, Plaintiff has not provided any evidence to rebut as pretext Defendants' stated reason for the employment actions that Plaintiff was not performing her job duties satisfactorily and was not qualified for the position of Operations Associate. Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

## C. Defendant White is entitled to summary judgment on Plaintiff's ADA failure to accommodate claim.

Plaintiff also alleges that her employer, Defendant White, failed to provide a reasonable accommodation in the form of a transfer in violation of the ADA. The proper defendant in an ADA claim is the plaintiff's employer, and supervisors are not personally liable under the ADA. See 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability"); 42 U.S.C. § 12111(2) (definition of "covered entity" includes "an employer, employment agency, labor organization, or joint labor-management committee"); Silk v. City of Chicago, 194 F.3d 788, 797 n. 5 (7th Cir. 1999) (holding that "a supervisor

cannot be held liable in his individual capacity under the ADA").
The State of Illinois has waived Eleventh Amendment immunity
with respect to the ADA.  See 745 ILCS 5/1.5(d) (providing that a
State employee, former employee, or prospective employee may
bring an action under the ADA in State circuit court or federal
court).

The ADA prohibits employment discrimination against
disabled employees.  Discrimination includes failing to make
"reasonable accommodations to the known physical or mental
limitations of an otherwise qualified individual with a disability."  42
U.S.C. § 12112(b)(5)(A).

An individual is disabled under the ADA if she (1) has "a
physical or mental impairment that substantially limits one or more
major life activities of such individual; (2) has " record of such an
impairment"; or (3) is "regarded as having such an impairment."  42
U.S.C. § 12102(1).  Plaintiff bases her claim on the first definition.

To defeat Defendants' motion for summary judgment, Plaintiff
must present the Court with evidence that, if believed by the trier of
fact, would establish the elements of her claim.  Kotwica v. Rose

Packing Co., Inc., 637 F.3d 744, 748 (7th Cir. 2011); see also

McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1164 (7th Cir.

1997) (the plaintiff bears the burden of "at least creating a genuine

issue of material fact as to whether" she is a qualified individual

with a disability).  Therefore, Plaintiff must show a genuine issue of

material fact exists on whether: (1) she is a qualified individual with

a disability, meaning she can perform the essential functions of the

job with or without a reasonable accommodation; (2) her employer

was aware of her disability; and (3) her employer failed to

reasonably accommodate her disability.  Kotwica, 637 F.3d at 747-

48.  A "qualified individual" is "an individual who, with or without

reasonable accommodation, can perform the essential functions of

the employment position that such individual holds or desires."  42

U.S.C. § 12111(8).

Defendant White asserts that Plaintiff has submitted no

admissible evidence that she suffered from depression.  Defendant

White also asserts that Plaintiff has not demonstrated in the record

that her depression substantially limits her ability to perform a

major life activity.  Finally, Defendant White argues that the failure

to be able to work with a particular supervisor does not establish that Plaintiff is disabled.  Defendant White notes that the significance of the documents Plaintiff submits are not explained and the documents are not accompanied by any evidentiary foundation with respect to their authenticity.

The Court agrees with Defendant White that many of the documents Plaintiff attaches to her pleadings are not authenticated. See Gunville, 583 F.3d at 985 (holding that "a court may consider only admissible evidence in assessing a motion for summary judgment").  In addition, one of the documents submitted references a different disability than Plaintiff is claiming.  Plaintiff claims she suffers from major depression disorder.  Plaintiff's Request for Reasonable Accommodation dated August 23, 2012, which is signed by a physician, asserts Plaintiff suffers from acute stress disorder. d/e 77-4.

Even assuming Plaintiff suffers from depression, merely having a medical condition is not enough for Plaintiff to be considered disabled.  Powers v. USF Holland, Inc., 667 F.3d 815, 819 (7th Cir. 2011).  To get past summary judgment, Plaintiff must

demonstrate in the record that her depression substantially limits her ability to perform a major life activity.  See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1061 (7th Cir. 2000).

Depending on the severity, depression can cause a substantial limitation on a major life activity.  Cassimy v. Bd. of Educ. of Rockford Public Schs., Dist. No. 205, 461 F.3d 932, 936 (7th Cir. 2006).  "The critical question in every case is what was the effect of the impairment on the life of the individual."  Id.

Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  A major life activity also includes "the operation of a major bodily function," including neurological and brain functions. 42 U.S.C. § 12102(2)(B).

Although the mental or physical impairment must "substantially limit" a major life activity for an individual to be considered disabled, the 2008 amendments to the ADA clarified that the term "substantially limit" should be broadly construed in

favor of expansive coverage.  <u>See</u> 42 U.S.C. § 12102(4); ADA

Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553

(providing that the term "substantially limits" should be construed

consistent with the findings and purposes of the ADA Amendments

Act of 2008); <u>see</u> <u>also</u> 29 C.F.R. § 1630.2(j)(1)(i) (providing that the

term "substantially limits" is "not meant to be a demanding

standard").  A person with an impairment that substantially limits a

major life activity is disabled even if the impairment is transitory or

minor.  <u>Gogos v. AMS Mech. Sys., Inc.</u>, 737 F.3d 1170, 1172 (7th

Cir. 2013) (citing 42 U.S.C. § 12102(3)(B)).

Even under this broader definition of "substantially limits,"

Plaintiff has presented no evidence to support her claim that her

depression substantially limits one or more major life activities.

When asked in her deposition to describe her major depressive

disorder, Plaintiff responded, "I do not recall."  Page 29; <u>see</u> <u>also</u>

Dep. Tr. 21 (when asked what her disability was, she testified she

did not remember).

Defendants tried to question Plaintiff during her deposition

about how her physical or mental impairment substantially limited

one or more major life activities.  She testified she could drive, read, and did not have any problem with her eyesight (except that she wore glasses). Dep. Tr. 23.  Plaintiff could not recall whether, at the time in question, she could wash dishes, make a bed, make meals, comb her hair, brush her teeth, bathe herself, or go to the bathroom without assistance.  Id. at 23-24.  She could not recall if anything was wrong with her hearing, whether she had trouble walking, whether she had trouble speaking, or whether she had trouble breathing.  Id. at 24-25.  Plaintiff could not remember if any mental health professional told her there was anything wrong with her cognitive functioning.  Id. at 25.  Plaintiff could not recall how her condition affected her ability to perform a job.  Id.

The Court notes that Plaintiff is currently on sick leave from her job (according to Plaintiff's deposition testimony). Dep. Tr. at 16.  But the Court does not have additional information about Plaintiff's sick leave.  Plaintiff did not remember how long she had been on sick leave and only stated she was under the care of a therapist or psychiatrist.  Id. at 16-18.

Plaintiff also submitted with her Motion for Summary Judgment a document that suggests Plaintiff did not have any restrictions. The Request for Reasonable Accommodation form completed by Plaintiff's physician indicates that Plaintiff had no work or job restrictions except that she needed to work for a different supervisor. <u>See</u> d/e 77-4. However, the Seventh Circuit has held that if a plaintiff "can do the same job for another supervisor, she can do the job, and does not qualify under the ADA." <u>Weiler v. Household Fin. Corp.</u>, 101 F.3d 519, 525 (7th Cir. 1996); <u>Schneiker</u>, 200 F.3d at 1062 ("Standing alone, a personality conflict between an employee and a supervisor—even one that triggers the employee's depression—is not enough to establish the employee is disabled, so long as the employee could still perform the job under a different supervisor"). Although these cases predate the 2008 amendments to the ADA, courts continue to apply them. <u>See</u> <u>Pack v. Ill. Dep't of Healthcare & Family Servs.</u>, No. 13-CR-8930, 2014 WL 3704917, at *3 (N.D. Ill. July 25, 2014) (finding the plaintiff did not sufficiently allege she was disabled where she

alleged her disability arose only in the presence of a single supervisor).

Therefore, the Court finds Defendant White is entitled to summary judgment on Plaintiff's ADA failure-to-accommodate claim.

**D. The Court declines to exercise jurisdiction over Plaintiff's state law claims.**

Because the federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims of breach of contract and negligent and intentional infliction of emotional distress.

## V. CONCLUSION

**For the reasons stated, Defendants' Motion to Strike Plaintiff's Declaration (d/e 86) is GRANTED. Defendants' Cross-Motion for Summary Judgment (d/e 81) is GRANTED as to the federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The state law claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's**

Motion for Summary Judgment (d/e 77) is DENIED.  This case

is CLOSED.

ENTER: May 29, 2015

FOR THE COURT:


                    s/Sue E. Myerscough
                 SUE E. MYERSCOUGH
                 UNITED STATES DISTRICT JUDGE